ARTHUR GRIBBLE and GLORIA GRIBBLE, Plaintiffs Below, Appellants, v. ROYAL INSURANCE COMPANY, LIMITED, a corporation of Great Britain, Defendant Below, Appellee.

(*November* 15, 1960.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Jacob Balick* for appellants.

*Albert L. Simon* for appellee.

Supreme Court of the State of Delaware, No. 19, 1960.

SOUTHERLAND, C.J.:

This is a suit upon a policy of insurance to recover a loss to plaintiffs' house caused by a rupture of the hot water heating system, a risk covered by the policy.

On August 8, 1956, the defendant Royal Insurance Company issued to plaintiffs, owners of a dwelling near Newark, Delaware, a "Home Owners Policy" of insurance. Included in the risks insured is the rupture of a steam or hot water heating system. There was a mortgage on the premises and, according to the usual practice, the original policy containing the standard mortgagee clause was sent to the mortgagee. At some time (presumably at the time when the policy was issued or shortly later) the company delivered to the insured a "Memorandum of Insurance" which will be described later.

On January 1, 1958, while the policy was in effect, plaintiffs suffered a loss by reason of a "tearing asunder or crack-

ing" of the hot water system in the insured dwelling. On April 12, 1959, more than fifteen months later, plaintiffs brought suit to recover damages. The company defended on the ground that suit had not been brought within twelve months after the loss, as required by the conditions of the standard fire policy, which were included in the policy issued to plaintiffs. The company's motion for summary judgment on that ground was granted by the trial court. The plaintiffs appeal.

In order to explain the issue before us, we must examine the proceedings in the trial court.

The complaint, in addition to alleging the issuance of the policy and the subsequent loss and damage, averred that a copy of the policy was attached to the complaint. In fact the paper attached was not a copy of the policy, but a copy of the "Memorandum of Insurance" delivered to plaintiffs. The company answered. It denied the loss and damage, and also denied that the copy attached to the complaint was a full copy of the entire policy, and averred that a portion of the policy had been omitted. The company attached to its answer the omitted portion, which consisted of the numerous conditions which are a part of the New York standard fire policy approved for use in this State. See 3 *Richards on Insurance*, § 497; 4 *Id.*, app., p. 1955. One of these conditions (lines 157 to 161) provides:

"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless within twelve months next after inception of the loss."

The plaintiffs did not file a reply to the answer. However, in response to a request by the defendant to admit that the conditions attached to its answer were a part of the policy,

plaintiffs denied that they were a part of the policy, in that no copy of them had been delivered to plaintiffs.

The case seems to have come before the trial judge on plaintiffs' theory that the delivery of a "Memorandum of Insurance" not containing the standard conditions of the fire policy was, as a matter of law, a waiver by the company of all these conditions, and that in the event of a loss they could not be bound by any of these conditions. The defendant contended the contrary.

To resolve the issues we must first examine the memorandum delivered to the insured.

It consists of two parts. The first part is a single sheet; the second part is a double sheet, affixed to the single sheet by some adhesive. The face of the first sheet is quite similar to the first page of the 1943 New York Standard Fire Policy. It sets forth the name of the company and of the insured, the location of the insured building, the amount of premium, the name of the mortgagee, etc. It also lists in general terms the coverages, which, since the policy is a "Home Owners Policy", include risks in addition to fire. These coverages are divided into Section I, covering five risks, lettered A to E, incident to property damage, and Section II covering two risks, lettered F and G, incident to personal liability and medical payments. The concluding paragraph, embodying the company's covenant to insure, appears to be taken almost verbatim from the standard fire policy. Most of the form is printed, and the words inserted appear to be carbon copies of an original.

In the upper right hand corner of the paper appears in red ink the title: "Memorandum of Insurance". Stamped diagonally across the face of the sheet is the following statement, also in red ink:

"This Is Not a Policy of Insurance. This Memorandum of Insurance is furnished as a matter of information only. No rights are conferred by this memorandum of insurance upon

the named insured respecting Section I of Coverages A and B."

The back of this sheet is blank.

We pause for comment. It is clear that the memorandum given the insured was not the original policy and no one could suppose that it was. But might the insured suppose that its text, supplemented by the other part of the memorandum, was a complete *copy* of the original policy?

We turn to the second part of the memorandum, consisting of the doube sheet, printed on all four sides. This part is headed "Homeowners Policy—Form B". It is, we infer from the company's answer, an exact duplicate of that part of the homeowners policy which details at great length the nature of the risks insured, and the exclusions, limitations, and conditions applicable thereto. It is divided into three parts: "Provisions applicable to the entire policy"; "Provisions applicable only to Section I"; and "Provisions applicable only to Section II". These provisions are very long and very detailed.

Now, when these two sheets are attached to the first sheet above described, the whole forms a very formidable looking document. No doubt the copy of Form B was inserted for the information of the insured. But a jury might find, not unreasonably, that an insured, not versed in insurance law or practice, would believe that the whole document constitutes a true copy of the entire policy. The endorsement in red ink on the face of the first sheet states, as above indicated, that the memorandum is furnished "as a matter of information". In the circumstances here shown, it might be said: Should not the information have been complete?

On the other hand, a careful reading of these four printed pages might indicate that the memorandum was not a complete copy. Thus, no signature of an officer of the company, original or facsimile, is to be found. The back of the first sheet is blank, a fact that might suggest an omission. Paragraph 4

of the "Provisions applicable to the entire policy" refers to the words "twelve months", in "line 161 in the numbered lines of this policy". The reference is to the limitation provision quoted above, relied on in this case by the company. Since there are no numbered lines in the document given to the insured, a careful reader would infer that the document is not complete. Finally, one of the conditions of Section II provides that no action shall lie "until thirty days after the required proofs of claim have been filed." There is no provision respecting proofs of claim in the document furnished the insured. That requirement is found in the standard conditions, lines 97-99.

The company is entitled to press this view of the matter.

We accordingly take the view that the circumstances give rise to two questions of fact:

1. Were the plaintiffs justified in believing that the memorandum was a copy of the entire policy?

2. If so, were they misled, after the loss, into believing that there was no contract provision limiting the time for suit?

In connection with the second question, we note that the record is silent as to what happened in this case after loss. We have no facts with respect to notice, proof of loss, or negotiations for settlement. Moreover, the plaintiffs did not plead any facts as the basis of an estoppel. They pitched their case upon the theory that the mere delivery of the memorandum was, as a matter of law, a waiver of all defenses contained in the standard conditions. The company's position was that as a matter of law there was no waiver or estoppel.

The question seems to us to be one of estoppel, although the distinction between waiver and estoppel in insurance law is elusive. *Cf.* 3 *Richards on Insurance*, §§ 429-431. Certainly the company did not intend by furnishing the memorandum to relinquish all its rights under the standard conditions of

the fire policy. But the furnishing of the incomplete memorandum might, after the happening of the loss, have misled the insured into delaying suit. It may well be a question of fact whether it did so.

We do not know what the pertinent facts are. If, in determining the answers to the two questions above stated, conflicting inferences might be drawn from the facts, as now seems probable, the issues would be for the jury. *Cf. Emory v. Glens Falls Insurance Co.,* 7 *Penn.* 101, 76 *A.* 230; *Bonnert v. Pennsylvania Insurance Co.,* 129 *Pa.* 558, 18 *A.* 552. Therefore the motion for summary judgment should not have been granted on the record before the Court.

We should add that neither counsel has been able to cite the Court to any case directly in point on the facts, nor has our own research disclosed any such case. The reason for this may well be that the comprehensive Home Owners Policy, covering unrelated risks, is of comparatively recent origin. It was authorized in this State by the act of April 24, 1945, 45 *Del. C.* c. 81, 18 *Del. C.* §§ 1102-1105. The practice of giving the insured a so-called "memorandum of insurance" in cases in which the original policy goes to the mortgagee may be of older origin, but the inclusion in such memorandum of a duplicate of the elaborate provisions respecting extended coverage must have been adopted since 1945.

Plaintiffs' counsel have cited text book and decisional authority dealing with individual certificates representing group life insurance. See 1 *Appleman, Insurance Law and Practice,* § 46; *Adair v. General American Life Insurance Co., Mo. App.,* 124 *S. W.* 2d 657. Certificates of participation in group life insurance are not analogous to memoranda of the kind here involved. These authorities are not in point. We fall back on the general principles of waiver and estoppel in insurance law. On these questions there are innumerable decisions, all turning on the particular facts before the Court. It is elementary that, if he relies on estoppel in order to escape

the consequence of non-compliance with a policy condition, the insured must show (1) misleading conduct of the company, and (2) reliance thereon by him to his injury. *Emory v. Glens Falls Insurance Co., supra.*

As above stated, the record in this case does not disclose all the facts. But, in spite of plaintiffs' election to rest upon an erroneous theory, we think that they should have an opportunity to show the facts. The company elected to meet them on their own ground, and did not urge the insufficiency of the pleadings.

One comment should be added. If the company in this case had furnished to the insured merely a memorandum to the effect that the insurance had been written in a specified amount, without including the elaborate "Form B", or, alternatively, had stated on the "memorandum" that the paper furnished was *not* a complete copy of the entire policy, the plaintiffs would clearly have been bound by the policy condition respecting the limitation of the time for suit. *Murray v. Lititz Mut. Insurance Co.*, 5 *Terry* (44 *Del.*) 447, 61 *A.* 2d 409. Why the method used was adopted we do not know. It is possible that a mistake occurred. Thus, the second sentence of the red ink endorsement across the face of the first sheet reads:

"No rights are conferred by this memorandum of insurance upon the named insured respecting Section I of Coverages A and B."

This sentence, in its context, is unintelligible. "Section I of Coverages A and B" means, presumably, "Coverages A and B of Section I". These are the real estate coverages. The sentence seems to say to the insured that although there has been issued to him an insurance policy on real estate he has no coverage on it—which is absurd. Perhaps, by error, the agent used a form intended for use in connection with a policy issued to a tenant.

This is only surmise. The point of the matter is that it emphasizes the possibility that the memorandum might have confused the insured.

As above noted, the plaintiffs have not properly pleaded estoppel.

Accordingly, the judgment of the Superior Court is reversed, with instructions to vacate the judgment, and to afford plaintiffs an opportunity to amend their pleadings, and an opportunity to defendant to answer such amended pleading, if it be filed.