**BRANDYWINE ONE HUNDRED CORP.,
a/k/a Brandywine 100 Corp., a Delaware Corporation, Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY, a Connecticut Corporation,
Defendant.**

**Civ. A. No. 74–242.**

United States District Court,
D. Delaware.

Nov. 21, 1975.

---

Daniel L. Twer, Wilmington, Del., for plaintiff.

Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, Del., for defendant; Harry P. Begier, Jr., and Ronald B. Hamilton of Orlofsky, Cozen & Begier, Philadelphia, Pa., of counsel.

## OPINION AND ORDER

STEEL, Senior District Judge:

Plaintiff, a Delaware corporation, whose land and building in Delaware were insured against fire and vandalism by defendant, brought suit against defendant on the policy for losses alleged to amount to $30,000. The action was originally begun in the Superior Court of Delaware and was properly removed to this court. Jurisdiction exists under 28 U.S.C. § 1332(a)(1). Defendant has moved for summary judgment on the ground that there is no genuine issue of material fact and that as a matter of law judgment should be entered in its favor. More particularly, defendant asserts that the plaintiff failed to give notice of the losses, file proofs of claim therefor, or institute action within the time limits established by the policy. The motion is before the Court upon the pleadings, depositions and a pretrial order. The parties have agreed that the disposition of the motion is to be controlled by Delaware law.

A motion for summary judgment may only be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." "In determining the presence of a disputed issue of material fact on motion for summary judgment, 'all inferences, doubts and issues of credibility' should be resolved against the moving party." *Suchomajcz v. Hummel Chemical Company*, 524 F.2d 19 (3rd Cir., 1975). The evidence is to be "viewed in the light most favorable to the opposing party". *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is only appropriate in "the absence of any significant probative evidence tending to support the complaint". *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). These principles are well established and are the guidelines for the Court in ruling upon defendant's motion.

Plaintiff sustained three losses for which it seeks to recover: one for vandalism which occurred in October of 1971, another for vandalism which took place in October of 1972, and a loss resulting from a fire in March of 1973. At the argument plaintiff conceded that partial summary judgment should be entered for defendant on the October 1971 vandalism claim.

The policy sued upon reads:[1]

"The insured shall give immediate written notice of any loss, . . . and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss. . . . No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss."

Plaintiff filed suit on October 2, 1974. This was almost two years after the last act of vandalism took place and almost one year and seven months following the fire loss. The policy expressly states that no suit or action on it for the recovery of any claim should be sustainable unless begun within twelve months next after the inception of the loss. On its face plaintiff's delay in bringing suit would appear to be a complete bar to the action.

Plaintiff argues, however, that the defendant has the burden of proving that it was prejudiced by the inaction of the plaintiff in instituting suit, that the defendant has failed to establish that it was prejudiced, and hence the one year condition in the policy, as a matter of law, has no validity as a defense.

Plaintiff admits that it knows of no case in Delaware or elsewhere which is directly in point to support its argument. Plaintiff merely points to *State Farm Mutual Automobile Insurance Company v. Johnson*, 320 A.2d 345 (Del.Supr.1974) and asserts that by analogy it sustains its position that prejudice to an insurer is the critical factor when it pleads as a defense a policy condition which requires suit to be brought within a speci-fied period of time after the loss. The *State Farm* case was concerned with the failure of an insured to notify the insurer of an accident under a policy which stated that *notice* should be given "as soon as practicable". The Court stated that (p. 346):

"[A]n insured's breach of the notice provision, without prejudice to the insurer, will not relieve the company of its liability under the contract."

And, at p. 347:

"Therefore, we hold that when an insured fails in his burden of proving compliance with the notice condition, before any forfeiture can result, the insurer has the burden of showing that it has thereby been prejudiced."

The attempted analogy of the *State Farm* principle to the facts at bar is based on the circumstance that both the notice and limitation on suit provisions impose requirements of actions by the insured subsequent to the loss. Plaintiff emphasizes that in *Standard Accident Insurance Company v. Ponsell's Drug Stores*, 202 A.2d 271 (Del.Supr.1964) it was stated that a Court should be liberal in finding an estoppel when an insurer asserts a forfeiture provision (in that case due to failure to make proof of loss) because the relevant conduct of the insured is "an action taken subsequent to the loss and rarely increases the risk to an insurance company". From this plaintiff contends that since failure of the plaintiff to file suit within twelve months after the loss arose is not inherently prejudicial, a Delaware Court would, and hence this Court should, analogize the case before it to the *State Farm* case and require proof that the defendant was actually prejudiced before effectively asserting as a defense the policy limitation on suit.

---

1. Policy number 39–S–240–125 was in effect from October 12, 1970 to October 12, 1971. In October of 1971 this policy was renewed as number 39–FS–266–765, running from October 12, 1971 to October 12, 1972. In October of 1972 this policy was again re-newed as number 39–FS–277–812, running to October 12, 1973. The provision quoted in the text was the same in all policies. On May 3, 1973, defendant sent plaintiff written notice that the policy had been cancelled pursuant to its cancellation paragraph.

This argument is unpersuasive. As pointed out in the *State Farm* case the purpose of the notice requirement in a policy is the avoidance of prejudice to an insurer in handling a claim due to lapse of time. For this reason the failure of an insured to give notice will be recognized as a defense only if the insurer is actually prejudiced thereby. By contrast, the purpose of a policy limitation on suit is not to avoid prejudice to an insurer in opening the handling process so that files may be closed at a definite date, uncertainty as to the amount of an insurer's liability avoided, and stale claims cut off. This being the purpose of a policy time limitation for bringing a suit, prejudice from delay in filing suit is not a "paramount" concern, as was the stated rationale in *State Farm v. Johnson,* where the issue was the failure to give notice. It is, therefore, unlikely that a Delaware Court would require an insurer to prove prejudice before effectively asserting as a defense the delay by an insurer in instituting an action beyond the time limitation of the policy.

Plaintiff makes much of the fact that the provisions for the notice and the twelve month limitation on suit are both a part of the general forfeiture provision entitled "Suit". While this is true, its significance is not apparent. The essential difference between the requirement of notice and the limitation on suit has already been referred to. The purpose of the former is to avoid prejudice; the latter is simply a contractual modification of the statute of limitations. The weight of authority in the United States holds that a provision in an insurance policy which requires an action for loss to be instituted within a period of time less than the period of limitations prescribed by statute is valid if the period in the policy is reasonable. In Delaware a provision in a policy requiring suit to be brought within one year from the date of loss is valid and binding upon an insured. *Murray v. Lititz Mut. Ins. Co.,* 5 Del.Super. 447, 61 A.2d 409 (1948). This decision has been recently cited with approval in *Rumsey Electric Company v. University of Delaware,* 334 A.2d 226, 229 (Del.Supr.1975). From what has been said it follows that plaintiff's failure to bring suit on the vandalism and fire losses within one year from their occurrence bars the action even though defendant has shown no prejudice unless, as plaintiff additionally contends, the defendant is estopped from asserting the one year time bar.

Insofar as estoppel is concerned, a plaintiff who asserts it has the burden of proving its essential elements.[2] These are specified in *Gribble v. Royal Ins. Co.,* 3 Storey 109, 165 A.2d 443, 446 (Del. Supr.1960) where the Court said:

"It is elementary that, if he relies on estoppel in order to escape the consequence of non-compliance with a policy condition, the insured must show (1) misleading conduct of the company, and (2) reliance thereon by him to his injury."

Plaintiff refers to only two instances of allegedly misleading conduct by defendant in the year following the vandalism loss of October 1972. The first is the act of defendant's Claim Supervisor Mr. Pettes. On May 11, 1973, he agreed to aid plaintiff in locating a contractor to obtain an estimate of the amount of the loss (See P–1 and P–2). Plaintiff does not claim to have relied on this act in abandoning its own search for a contractor and Mr. Swimmer ex-

2. Plaintiff does not contend that defendant *waived* the limitation on suit provision. Defendant explicitly disclaimed an intent to waive any policy conditions in a letter to Mr. Swimmer dated December 19, 1972 from Claim Supervisor Wayne Pettes. (D–11). Thereafter defendant at all times insisted on plaintiff's execution of a non-waiver agreement which would have provided that defendant's investigation of the loss would not operate as a waiver of any policy provisions. (See discussion at page 152, *infra.*) In the January 14, 1974 letter to Mr. Swimmer, Claim Supervisor James Scott again noted that no waiver was intended. (D–16).

plicitly denied having told plaintiff's president, Mr. Gaster, that he could do so. (Swimmer deposition at pages 67–68). This conduct by defendant at most indicated that it was still considering the claim as of May 1973. It was not in itself conduct which could reasonably have misled plaintiff into thinking that suit within the one year time period of the policy was not necessary, nor is there any evidence that plaintiff relied upon it in determining to forego suit.

██ Second, plaintiff stresses the fact that the defendant had insisted on plaintiff executing a non-waiver agreement before it would give further consideration to its claim. The record shows that in a letter dated May 14, 1973, Claim Supervisor James Scott stated that the defendant would take no further action on the claim until a "Non-Waiver Agreement" was signed. The "Non-Waiver Agreement" (attached to D–10) stated that by investigating the loss and ascertaining its amount defendant did "not waive or invalidate any of the conditions of the policy of insurance".[3]

Plaintiff argues that the insistence of the defendant upon the execution by plaintiff of a Non-Waiver Agreement was not an unequivocal denial of liability, leading plaintiff to believe that defendant was considering the claim and that it would continue to do so once plaintiff executed the Non-Waiver Agreement even though this should be after the one year limitation period had expired. This argument is not plausible. The insistence by the defendant on the execution of the Non-Waiver Agreement was not conduct which could have reasonably misled plaintiff into believing that defendant would not rely upon the policy condition that suit be brought within one year after the loss. The agreement which the defendant was insisting upon meant merely that defendant would not proceed with its investigation and negotiations until plaintiff agreed that such

action on its part would not be construed as a waiver of any of the policy conditions. This is what the proposed agreement said. Rather than misleading plaintiff into foregoing suit, defendant's insistence on having a non-waiver agreement should have reasonably alerted plaintiff to the fact that defendant was going to strictly enforce the conditions of the policy.

██ Plaintiff stresses the fact that in previous negotiations with respect to other claims Mr. Swimmer had never known of defendant insisting on timely notice and proof of loss. But even if this previous acquiescence were found to constitute an estoppel as to the notice and proof of loss conditions (an issue which the Court need not actually decide), it does not follow that defendant was also thereby estopped from asserting the twelve month limitation on suit. There is no evidence that Mr. Swimmer or Mr. Gaster, the president of plaintiff, ever gave any consideration to the one year limitation, and defendant's failure to alert them is not sufficient grounds on which to base an estoppel. 44 Am. Jur.2d, Insurance, § 1917 (1969) states:

"A refusal to pay while certain conditions exist is not a waiver of the limitation until the condition is removed, and the fact that the insurer . . . in various negotiations . . . did not call their attention to the provision therein limiting the time within which action thereon might be brought, nor in any way indicate that reliance would be placed on such provision, is not a waiver thereof, nor does it create any estoppel against subsequent reliance on it."

 On November 8, 1973, Mr. Swimmer wrote to Mr. Scott of defendant, informing him that an estimate had been obtained and requesting a copy of the Non-Waiver Agreement. (P–3). Mr. Scott did not reply. Mr. Swimmer then telephoned him and learned that

---

3. The date the agreement had originally been sent to plaintiff's attorney, Mr. Kassab, was January 2, 1973, and was never signed (See D–10, D–9, D–8 as well as D–16).

the claim was being denied. The denial of the claim was confirmed in a letter from Mr. Scott to Swimmer-Wolfe Company dated January 14, 1974. (D–18). The failure of Mr. Scott to answer Mr. Swimmer's letter of November 8, 1973, is not misleading conduct,[4] and even if it was, these events occurred after October 1973, when the time for bringing suit expired. It cannot possibly operate as an estoppel to the defense that plaintiff's right to sue was barred in October 1973.

As to the claim based upon the vandalism which occurred in October 1972, the record discloses no evidence to support an estoppel against the defendant which would prevent it from standing upon the condition of the policy requiring suit to be brought within one year after the occurrence of loss.

■ There is also no evidence in the record that after the fire loss occurred on or about March 23, 1973, the defendant either by words or actions said or did anything in its relationship with plaintiff to mislead plaintiff into believing that it need not bring suit by March 23, 1974. Furthermore, by letter dated January 14, 1974, the defendant advised the Swimmer-Wolfe Company, plaintiff's agent, that "due basically to the lack of cooperation [by plaintiff] we have closed our file on a no claim basis. Please be advised that we are waiving none of our rights but are reserving all of our rights and defenses under the policy". This letter was written more than two months before the expiration of the one year period within which the policy required plaintiff to sue and provided plaintiff with a reasonable time to bring suit within the policy limit.[5] Nonetheless, plaintiff delayed instituting action until August 2, 1974. Plaintiff has advanced no reason why suit could not have been instituted by March 23, 1974, when the one year period expired.

The record discloses no genuine issue as to any material fact. Defendant's motion for summary judgment should therefore be granted. Because the Court finds that the action is barred by limitation on suit contained in the policy, there is no reason to consider the effect of plaintiff's failure to file notice of loss and proof of loss as required by the policy.

### ORDER

It is hereby ordered that the complaint be dismissed, costs to defendant.

---

4. *Murray v. Lititz Mut. Ins. Co.*, 5 Del.Super. 447, 61 A.2d 409 (1948).

5. There is a split of authority as to whether after the cessation of misleading conduct the insured has available the entire policy period or only a reasonable time in which to bring suit. At least where the insurer has disclaimed liability a reasonable time before the expiration of the policy period, the cases generally require suit within the policy period. See annotation, 29 ALR2d 636, 650 (1953) ; *Sherwood Jewelers-Newark, Inc. v. Philadelphia National Ins. Co.*, 102 F.Supp. 103 (D.N.J.1952) (suit filed 13 days after expiration of the period held barred, plaintiff having had 10 days remaining in the period after defendant's disclaimer was mailed) ; *General Ins. Co. v. Lee Chocolate Co.*, 97 Ga.App. 588, 103 S.E.2d 632 (1958). But see *Terpeluk v. Insurance Company of North America*, 189 Pa.Super. 259, 150 A.2d 558 (1959).