Raymond CLOSSER, Plaintiff
Below, Appellant,

v.

PENN MUTUAL FIRE INSURANCE
COMPANY, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 17, 1982.
Decided: Feb. 8, 1983.

Alan T. Boyd (argued), Bayard, Brill & Handelman, P.A., Wilmington, for appellant.

Robert B. Young (argued), Young & Schwartz, Dover, for appellee.

Before QUILLEN, HORSEY and MOORE, Justices.

HORSEY, Justice:

This appeal raises a single issue—the timeliness of an insured's suit against his insurer to recover his portion of policy benefits from a fire loss on covered property owned in part by the insured.

Plaintiff, Raymond Closser, appeals Superior Court's grant of summary judgment to defendant, Penn Mutual Fire Insurance Company (hereafter "Penn Mutual" or "the insurer"). Summary judgment was granted on basically two grounds: (1) that the suit was time barred by the policy's twelve month suit limitation provision; and (2) that Closser had failed to meet his burden of proving either misleading or fraudulent conduct by Penn Mutual sufficient to toll the running of the policy's suit limitation.

On September 22, 1979, a fire of suspicious origin destroyed the home of Raymond Closser and his wife, not a party to this action. The property was titled in the Clossers' joint names and was insured by Penn Mutual against fire loss. The fire was determined to have been the result of arson.

In January, 1980, Closser, through his attorney (his wife was represented by other counsel), first contacted Penn Mutual's area representative as to a policy settlement. They communicated with each other through at least March of 1980. Sometime before July, 1980, Closser's brother-in-law admitted responsibility for the fire but implicated Closser; and Closser was indicted for arson in July, 1980. However, in November, 1980, the State nolle prossed the criminal charges against Closser.

In December, 1980, when Closser's attorney attempted to resume settlement negotiations with Penn Mutual, it rejected Closser's claim and denied liability.

Meanwhile, Closser's wife had reopened negotiations with Penn Mutual on her policy claim; and Penn Mutual paid her $40,000 in settlement of her interest in March, 1981. Closser then sought to reopen settlement negotiations with Penn Mutual but failed. Closser then filed the pending suit against Penn Mutual on May 5, 1981. As previously stated, Superior Court found the suit to be time barred and granted Penn Mutual's motion for summary judgment. Closser then docketed this appeal.

A.

Closser's first ground for reversal relates to the accrual of the policy's suit limitation provision. The policy provides:

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months after inception of the loss.

■ It is settled Delaware law, as Closser concedes, that a one year limitation on suit on an insurance contract is reasonable and binding on an insured. *Brooks v. Insurance Placement Facility of Delaware,* Del.Supr., 456 A.2d 1226 (1983); *Wesselman v. Travelers Indemnity Company,* Del.Supr., 345 A.2d 423 (1975); *Ottendorfer v. Aetna Insurance Company,* Del.Supr., 231 A.2d 263 (1967). However, Closser argues that no Delaware court has ruled when a one year insurance contract limitation begins to run. Thus, the first issue raised by Closser is, when did the twelve month limitation on suit on Penn Mutual's policy accrue?

■ Closser argues that since the suit is for breach of contract, the twelve month limitation period should not begin to run until Penn Mutual disclaims coverage or denies liability. And since Penn Mutual did not reject Closser's claim until December, 1980,[1] Closser says his suit filed five months later was timely filed. Closser relies for this result upon (a) *Allstate Insurance Company v. Spinelli,*[2] Del.Supr., 443 A.2d 1286 (1981) and (b) case law in other jurisdictions.

■ *Spinelli* does not control this case for two reasons: (1) a claim by an insured against his insurer on a fire policy is substantially different from a claim for uninsured motorist coverage benefits; and (2) a different event triggers each claim. In *Spi-*

*nelli,* Allstate's insured had no assertable claim against Allstate for uninsured motorist benefits until he established his right to recover damages from the uninsured tortfeasor *and* the latter's insurer denied the claim or determined that the tortfeasor had no coverage. *See, Spinelli,* 443 A.2d at 1291.

Unlike *Spinelli,* Closser in this case had an immediately ascertainable and assertable claim against Penn Mutual from the date of the fire loss; and the controlling limitation provision of the policy plainly relates the running of the twelve month limitation from the "inception of the loss." In contrast, as we noted in *Spinelli,* "an uninsured motorist claim is only indirectly related to the accident itself." 443 A.2d at 1291. Finally, the instant policy includes a suit limitation provision whereas in *Spinelli,* there was no policy provision-requiring resort to statutes of limitation and a determination of whether a personal injury statute or a contract statute more appropriately controlled a claim for uninsured motorist benefit coverage.

Under the fire insurance contract before us, we conclude that the language of the suit limitation clause, "after inception of the loss", must be construed to mean the date of the fire or other casualty causing the loss. Such clause cannot reasonably be construed as referring to the date of the insurer's denial of the insured's claim. The term "loss" is used throughout the instant

1. The Trial Court found Penn Mutual to have denied liability on March 6, 1980. We agree with Closser that this finding is not supported by the record and is clearly erroneous. The record discloses that Penn Mutual first informed Closser of its denial of liability (and refusal of his claim) on December 9, 1980.

2. In *Spinelli,* an insured sued his automobile insurance carrier (Allstate) to recover uninsured motorist benefits provided under his policy. This Court held that such a cause of action did not accrue until the carrier of the third-party tortfeasor had denied coverage and notified Allstate's insured of the rejection of his claim for such third-party coverage benefits. We stated:

> Established contract case law thus recognizes that until a breach occurs, there is no

justiciable controversy under the contract (here a policy) upon which a party may sue. So long as the parties to a contract perform in accordance with the bargained-for obligations, no party has cause to complain. It is only when one party contends the other party has failed to perform in violation of the contract that a justiciable controversy exists. Here, we conclude that a justiciable controversy did not arise until Allstate denied Spinelli's claim for coverage benefits and so informed Spinelli. The record indicates that that occurred sometime in November, 1979. Hence, Spinelli's suit against Allstate filed the following month was timely filed under § 8106.

443 A.2d at 1292.

policy as clearly and consistently relating to the "perils" which are covered by the policy.[3] *See, Brooks, supra* and *Wesselman, supra.*

## B.

 Closser next argues that the reasonableness of the twelve month suit limitation running from date of fire is effaced by the policy's additional compliance "requirements" imposed on an insured. Appellant refers to the policy's preceding limitation language barring "[any] suit . . . unless all the requirements of [the] policy shall have been complied with and unless commenced [within twelve months of] loss." Closser urges the Court: (a) to find these additional "requirements" to render unreasonable as a matter of law the policy's suit limitations running from date of fire loss; and (b) to rule either that the twelve month suit limitation is tolled (for some indeterminate period) from running from the date of fire loss *or* to construe the suit limitation "loss" clause as not running until the insurer has denied coverage. Several jurisdictions have apparently so ruled. However, before taking up the state of the law in other jurisdictions, this policy's "requirements" which are claimed to affect the reasonableness of the twelve months suit limitation should be examined.

Closser makes two related contentions: (a) that Penn Mutual's twelve month contract limitation is unfair because unreasonable in the context of an insured's other obligations under the policy; and (b) that at least one of those "requirements" relating to appraisal imposes conditions precedent to the running of the twelve month limitation which, after Closser invoked, Penn Mutual failed to comply with.

The pertinent provisions of Penn Mutual's policy provide:

*Requirements in case loss occurs.* The insured shall give immediate written notice to this Company of any loss . . . furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail, quantities, cost, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss. . . . The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property . . . and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices . . . at such reasonable time and place as may be designated by this Company. . . .

*Appraisal.* In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the um-

**3.** To illustrate, the policy, in pertinent part, provides:

"This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack . . . . (j) nor shall this Company be liable for loss by theft. * * * . . . this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the

insured . . . . * * * The extent of the application of insurance under this policy . . . in case of loss, and any other provision . . . * * The insured shall give immediate written notice to this Company of any loss, protect the property from further damage . . . * * * In case the insured and this Company shall fail to agree as to the actual cash value or the amount of the loss, then. . . . "

pire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

*Company's options.* It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.

*Abandonment.* There can be no abandonment to this Company of any property.

*When loss payable.* The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

*Suit.* No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

The particular provisions of the policy that Closser claims render a twelve month suit

limitation unenforceable because unreasonable are: (1) the requirement that an insured file a loss claim within sixty days of the loss; (2) the requirement that an insured provide further documentation of property loss, whenever requested; (3) the appraisal procedures' lack of time limitations on their being invoked and carried through to an award; and (4) the sixty day hiatus under the "loss payable" clause between the determination of an appraisal award and the date the loss becomes payable by the insurer. Closser criticizes these provisions, claiming: (1) that a suit may not be brought by an insured until *all* of these steps have been "completed"; (2) that these requirements reduce an insured's time for filing suit to considerably less than twelve months from inception of loss; and (3) that the insured has no control over the time limitations of an appraisal. As a result, Closser argues that the suit limitation provision is "one-sided and ambiguous."

These criticisms appear to be more theoretical than real; for the insured has made no *prima facie* showing that compliance with these requirements in fact delayed the filing of his suit beyond the anniversary date of the fire loss. Absent such a showing, we decline to rule as a matter of law that the existence of such policy provisions *requires* either a tolling of the limitation from the date of the fire or a reinterpretation of the limitation words "inception of the loss" to mean the insurer's denial of coverage.[4]

While there is authority for either of these two results,[5] there is also substantial

4. As will be seen, given our standard of review, this is not to say that a *prima facie* case of estoppel may not have been made against Penn Mutual of misleading conduct and reliance thereon by Closser to his detriment.

5. Authority for tolling an insurance contract limitation from running from the date of loss is found in *Peloso v. Hartford Fire Insurance Company,* N.J.Supr., 56 N.J. 514, 267 A.2d 498 (1970); *Tom Thomas v. Reliance Insurance Company,* Mich.Supr., 396 Mich. 588, 242 N.W.2d 396 (1976) and *Phoenix Insurance Co. v. Brown,* Tenn.Ct.App., 53 Tenn.App. 240, 381 S.W.2d 573 (1964). The *Peloso* court recog-

nized that the majority of courts ruling on the question had held to the contrary [computing the limitation period from date of the loss where the limitation is clear and unambiguous]. But the Court opted to follow the reasoning of the "few" jurisdictions that had adopted a concept of tolling. *See, Finkelstein v. American Insurance Company of Newark, N.J.,* La.Supr., 222 La. 516, 62 So.2d 840 (1952) *and Phoenix Ins. Co. v. Brown, supra.* However, *Finkelstein* was overruled by *Gremillion v. Travelers Insurance Company,* La.Supr., 256 La. 974, 240 So.2d 727 (1970), which then returned Louisi-

authority to the contrary.[6] And the latter appears to be the majority rule. 44 Am. Jur.2d, *Insurance,* §§ 1884 and 1911. Annot. 95 A.L.R.2d 1023. While our prior insurance policy limitation case law has not specifically addressed the accrual issue, *Ottendorfer, supra,* and *Wesselman, supra* clearly lean towards the majority rule that a contract limitation related to inception of loss should be construed as running from the time of loss, absent evidence of conduct by the insurer constituting either waiver or estoppel. In *Ottendorfer,* Chief Justice Wolcott stated:

> There is no doubt but that a one-year period of limitation of suit contained in an insurance policy is reasonable and binding upon the insured. *Murray v. Lititz Mutual Insurance Co.,* 5 Terry 447, 61 A.2d 409. The provision, therefore, is a complete bar to this action since it was commenced after the expiration of the period, unless the appellant can show that the companies have affirmatively waived the provision, or are estopped to raise the provision as a defense. *Emory v. Glen Falls Insurance Co.,* 7 Penn. 101, 76 A. 230. If the insured relies upon estoppel in order to avoid the consequence of non-compliance with the condition, he must prove misleading conduct of the company and reliance upon that by him to his injury. *Gribble v. Royal Insurance Co. Ltd.,* 3 Storey 109, 165 A.2d 443. As to waiver by the company of a policy condition, it is of course axiomatic that such a condition may be waived by the authorized acts and declarations of the company's agent. *Emory v. Glen Falls Insurance Co.,* supra.

231 A.2d at 265.[7]

Returning once more to the particular "requirements" of the policy before us, we

---

ana to the majority view that "inception of the loss" must be taken to mean "time of the fire" —rather than "time of the ascertainment of the loss from fire damage." 240 So.2d at 731.

A few courts have also simply read an insurance contract limiting suit to one year from inception of loss to mean one year from the insurer's denial of coverage. *Fireman's Fund Insurance Company v. Sand Lake Lounge, Inc.,* Alaska Supr., 514 P.2d 223 (1973). The Alaska court reached this result by analogy to the Uniform Commercial Code and by concluding that to enforce the insurance contract limitation provision as written would give an insurer an unfair advantage over insured claimants who have an inferior bargaining position. But here, no showing having been made that the contract was inherently unfair or unconscionable to the insured, we decline to rewrite the policy's limitation provision to read other than as accruing from the date of the fire loss. *See, Tulowitzki v. Atlantic Richfield Co.,* Del.Supr., 396 A.2d 956 (1978).

Other courts applying a tolling concept have done so: (1) on the basis of policy language barring an insured from suing until after submission of proof of loss, *Parker v. American Surety Company of New York,* N.Y.Supr., 176 Misc.2d 985, 29 N.Y.S.2d 414 (1941); (2) based on a conflict between the contract limitation provision and statutes governing insurance policy clauses. *Peloso, supra;* and (3) if the insured cannot determine the existence of a claim until the rights or liability of third party in interest are resolved. *Sassi v. Jersey Trucking Service, Inc.,* N.Y.App. 283 A.D. 73, 126 N.Y. S.2d 389 (1953) and *Zurn Engineers v. Eagle*

*Star Insurance Company, Ltd.,* Cal.App., 61 Cal.App.3d 493, 132 Cal.Rptr. 206 (1976).

**6.** Jurisdictions following the majority rule (that a contract limitation related to "inception of loss" runs from the time of the loss, absent waiver or estoppel and not from denial of coverage), include: *Adams v. Northern Ins. Co.,* Ariz.App., 16 Ariz.App. 337, 493 P.2d 504 (1972); *General State Authority v. Planet Insurance Co.,* Pa.Supr., 464 Pa. 162, 346 A.2d 265 (1975); *Proc v. Home Insurance Co.,* N.Y. App., 17 N.Y.2d 239, 270 N.Y.S.2d 412, 217 N.E.2d 136 (1966); *Bollinger v. National Fire Insurance Co.,* Cal.Supr., 147 P.2d 611 (1944); *Chambers v. Atlas Ins. Co.,* Conn.Supr., 50 Am. Rep. 1, 51 Conn. 17 (1883); *Appel v. Cooper Ins. Co.,* Ohio Supr., 76 Ohio St. 52, 80 N.E. 955 (1907); *Ramsey v. Home Insurance,* Va.Supr., 203 Va. 502, 125 S.E.2d 201 (1962).

**7.** *Compare, Proc v. Home Insurance Co., supra,* wherein Judge Fuld of the New York Court of Appeals rejected in essence the rationale for the minority rule.

> "Nor do we perceive anything unfair in reaching the result we do. If conduct or action on the part of the insurer is responsible for the insured's failure to comply in time with the conditions precedent, injustice is avoided and adequate relief assured, without doing violence to the plain language used by the Legislature, by resort to traditional principles of waiver and estoppel." 270 N.Y.S.2d at 416, 217 N.E.2d at 139.

are not persuaded that these provisions render unreasonable and unfair the twelve month suit limitation accruing from the occurrence of a fire loss. We find no unfairness in any of the "Requirements in case loss occurs" imposed upon the insured. Clearly, there is no unfairness in requiring an insured to give prompt notice of loss and to file a proof of loss claim within sixty days of the occurrence of a loss. Nor is there any inherent unfairness in the requirement that an insured provide such further documentation of a loss, "as may be reasonably required." As to the sixty day hiatus under the "loss payable" clause between the determination of an appraisal award and the insurer's obligation to pay the award, since no such award was made in this case, the clause has no relevance. Finally, the policy cannot be reasonably construed as either barring suit by an insured until all of the requirements and procedures have been completed nor as barring suit against Penn Mutual pending its review of the insured's proof of loss claim.

■ However, with respect to the policy's appraisal provisions, we cannot agree with Superior Court's conclusion that they have "nothing at all to do with establishing liability, limitation of action, or filing suit for a loss." Assuming that the appraisal provisions are invoked by either party, it is clear that they lack time limitations on their being either initially invoked or being carried through to an award. If invoked, the carrying out of such provisions could obviously impinge on an insured's determination to file suit. Thus, while the policy's appraisal provisions and its suit limitation provisions may well serve entirely different purposes, the former provisions amount to an alternative form of dispute resolution, short of litigation. Further, since the policy states that "an award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss", we construe the appraisal provisions of the policy, if invoked, to provide a mandatory form of arbitration, precluding recourse to the courts.

Thus, we cannot agree with the position taken by the insurer that the appraisal provisions of the policy, even if invoked by either party, have no bearing upon the issue of whether Closser's suit is time barred under the policy's suit limitation provisions.

### C.

Having found the policy appraisal procedures, if invoked, to be relevant to the issue of whether Closser's suit is time barred, we reach the insured's further contention that Penn Mutual is estopped by its conduct from invoking its twelve month suit limitation provision as a bar to this action.

■ Closser contends that at the very least a factual issue exists as to whether Penn Mutual should be so estopped. Further, in viewing those facts on appeal from grant of summary judgment, we must read the record in a light most favorable to the non-moving party, the insured. *Baoust v. Kraut,* Del.Supr., 377 A.2d 4 (1977). Moreover, our standard of review from grant of summary judgment permits affirmance only if the record reflects no genuine issues of material fact as well as no error of law.

The pertinent facts are: that the insured's attorney initiated settlement negotiations with Penn Mutual's area representative on January 9, 1980. The following day, the representative received a notarized proof of loss claim from the insured and forthwith rejected it with letter response to the insured. On January 29, 1980, the insured's attorney wrote Penn Mutual's area representative, stating in part:

We have selected David Wilson of Wilson Auctions, Route 113, Lincoln, Delaware, to appraise the property pursuant to lines 123–140 of page 2 of the policy. Please notify me of the name of the appraiser upon whom you will be relying.

The lines of the policy referred to incorporate the provisions of the policy relating to "Appraisal", set forth in full above. Under those provisions, Penn Mutual was required to select its own appraiser and to so notify the insured within twenty days. Penn Mutual did nothing. Thereafter, the insured's

attorney arranged for a conference between the parties to be held in the middle of February. He asked that, "all necessary documents and written appraisals of my clients home" be brought. The scheduled meeting took place; and nine days later the insured's attorney forwarded a third real estate "estimate" to Penn Mutual's representative. However, no specific mention was made in follow-up correspondence to an appraisal proceeding as such. In late February, the insured submitted a third "estimate", made "demand" for the face value of the policy and requested a prompt reply. The insurer's only response to the February 22 letter and two follow-up letters over the ensuing ten days was the following terse reply:

I acknowledge receipt of your letters of:

22 February, 1980

27 February, 1980

3 March, 1980

From March to July there is no record of any further communication between the parties.

■ As previously stated, Closser was indicted for arson on July 21, 1980. Those charges remained pending through the anniversary date of the fire in September and until late November, 1980, when the State entered a *nolle prosequi*. Shortly thereafter, the insured's attorney telephoned Penn Mutual's area representative and stated, in effect, "now that criminal charges [have been] dropped, let's get on and settle." The insurer responded by denying liability "at this time." In the meantime, the insurer reached a settlement with the insured's wife as to her claim under the policy.[8] As previously stated, the insured filed suit in May, 1981, and the insurer then raised for the first time the twelve month suit limitation as barring the claim.

■ On this record we conclude that a rational trier of fact could conclude: (a) that the insured effectively invoked the appraisal provisions of the policy; (b) that the insurer was obligated under the policy to proceed with the appraisal "option" to litigation; (c) that the insurer did not thereafter deal fairly with the insured in responding to his several requests for the insurer's position on his "demand" for the policy coverage; and (d) that the insured was thereby misled to his detriment in assuming there was no need to file suit within the time limitations of the policy. *Ottendorfer, supra;* and *Keil Motor Co. v. Royal Ins. Co.,* Del.Super., 171 A. 201 (1933). *See also,* 18 *Del.C.* § 2304(16), The Delaware Unfair Claims Settlement Practices Act, providing:

No person shall commit . . . any of the following:

\* \* \* \* \* \*

(b) Failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

\* \* \* \* \* \*

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

18 *Del.C.* § 2304(16).

*See also, William H. Sill Mortgages, Inc. v. Ohio Casualty Insurance Company,* 6 Cir., 412 F.2d 341 (1969); *Bowler v. Fidelity & Casualty Co. of New York,* N.J.Supr., 53 N.J. 313, 250 A.2d 580 (1969).

Since a triable issue of estoppel exists, Superior Court erred in granting summary judgment for Penn Mutual. *Vanaman v. Milford Memorial Hospital, Inc.,* Del.Supr.,

---

8. Closser argues that Penn Mutual waived the time limitation as to both wife and the insured by payment of wife's claim. We find no merit to Closser's contention. In *Steigler v. Insurance Co. of North America,* Del.Supr., 384 A.2d 398 (1978), this Court held that a wife, holding title to land in a tenancy by the entireties, is entitled to recover under a policy notwithstanding any arson committed by her husband. The rights of husband and wife are viewed as separate under the insured contract, *see, Steigler, supra,* at 402, and accordingly we find that payment to wife operates as a waiver of the suit limitation to wife alone.

272 A.2d 718 (1970); *George v. Frank A. Robino, Inc.,* Del.Supr., 334 A.2d 223 (1975). The judgment of the Superior Court is reversed and the case is remanded for trial.