ALLSTATE INSURANCE COMPANY, a
corporation duly existing under the laws
of the State of Delaware, Defendant Be-
low, Appellant,

v.

Clyde SPINELLI, Sr., Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Dec. 18, 1981.*

Decided March 22, 1982.

Dennis D. Ferri (argued), of Becker &
Ferri, P. A., Wilmington, for appellant.

Stephen B. Potter (argued), and James R.
Leonard, of Potter & Carmine, P. A., Wil-
mington, for appellee.

Before HERRMANN, Chief Justice,
DUFFY, McNEILLY, QUILLEN and HOR-
SEY, Justices, constituting the Court en
banc.

HORSEY, Justice, for the Court, with
DUFFY, Justice, concurring:

This appeal concerns the determination of
the applicable statute of limitations over
claims for "uninsured vehicle coverage" re-

---

* Supplemental briefing, following argument, was
not completed until Feb. 9, 1982.

quired under 18 *Del.C.* § 3902(a).[1] The Court of Chancery found plaintiff's claim to be contractual in nature. From this finding, the Court ruled that the applicable statute of limitations was 10 *Del.C.* § 8106,[2] which prescribes a three-year limitations period. The Court then ruled that under § 8106 plaintiff's claim for uninsured vehicle coverage benefits would not accrue against plaintiff's automobile's insurance carrier, Allstate Insurance Company, until the "uninsured motorist status of the tortfeasor is ascertained." Hence, the three-year limitation period of § 8106 did not begin to run until that date. Applying those rulings to the facts of the case, the Chancellor found the suit to have been timely filed and denied Allstate's motion to dismiss. We affirm the judgment below.

We conclude that an action by an insured against his automobile insurance carrier to recover uninsured motorist benefits essentially sounds in contract rather than in tort. Hence, the timeliness of a suit for uninsured motorist benefits is controlled by § 8106, our statute of limitations applicable to actions for breach of contract, rather than 10 *Del.C.* § 8119, our limitations statute controlling tort claims for personal injury.[3] We also agree with the Chancellor that the instant suit was timely filed. However, we disagree with the Chancellor as to when the three-year limitation of § 8106 begins to run on an uninsured motorist benefit claim. We hold that such a cause of action does not accrue, and hence the limitation of § 8106 does not begin to run, until the insurer denies coverage *and* notifies its insured of rejection of any claim for such benefits.

I

On August 28, 1976, Clyde Spinelli, Sr. (plaintiff) was injured in an automobile accident when his vehicle operated by his wife was struck in the rear by a vehicle driven by Eugene Gilday (Gilday). The purported insurer of the automobile driven by Gilday was Kemper Insurance Company (Kemper). Spinelli's vehicle was insured by Allstate Insurance Company (Allstate) with Spinelli the named insured. The policy included

1. 18 *Del.C.* § 3902(a) reads in full as follows:
"(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. Except, that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as 'uninsured vehicle coverage.'"

2. 10 *Del.C.* § 8106 states:

*"§ 8106. Actions subject to 3 year limitation.*
No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title."

3. 10 *Del.C.* § 8119 reads in full as follows:
"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title."

coverage for damages caused by "uninsured motorists." [4]

More than 20 months after date of accident, Spinelli filed a personal injury suit against Gilday in Superior Court. Negotiations ensued between plaintiff and Kemper (Gilday's purported insurer). However, Kemper's attorney deferred entering a court appearance for Gilday until November 30, 1978. But 13 days later, Kemper, on December 13, 1978, disclaimed third-party liability coverage on the automobile that Gilday was operating at the time of the accident.

Spinelli continued to pursue his pending suit against Gilday and in March, 1979 obtained a default judgment against Gilday. In September, 1979, following an inquisition as to damages, Spinelli was awarded a judgment of $16,000 against Gilday. In October, 1979, after the judgment proved to be uncollectible, Spinelli, for the first time, informed Allstate of Gilday's uninsured status. Spinelli also sought information as to the uninsured motorist provisions of his Allstate policy, though apparently without making a formal demand upon Allstate for uninsured motorist coverage benefits.

On December 10, 1979 (39 months after date of accident), Spinelli filed suit in Superior Court against Allstate for recovery under his policy of uninsured motorist benefits. The parties then agreed to stay the suit and to arbitrate their dispute under the arbitration provisions of the Allstate policy.[5] However, before an arbitration hearing could be held, Allstate withdrew from arbitration, answered Spinelli's complaint, and moved for judgment on the pleadings on its limitation defenses. Allstate relied primarily on the two-year limitation of § 8119 but contended, in the alternative, that if the action were controlled by § 8106, the suit was also time-barred because the cause of action accrued on the date of Spinelli's injury, the date of the accident.

Spinelli then filed this action in the Court of Chancery seeking an order compelling arbitration and staying the Superior Court proceedings, including determination of Allstate's pending motion for judgment on the pleadings. Allstate countered by moving to dismiss the Chancery suit as barred by either §§ 8119 or 8106.

As stated, the Chancellor denied the motion and ruled: *first*, that the claim was based on a contract right rather than a tortious injury; and therefore the three-year contract limitation of § 8106 controlled; and *second*, that liability accrued and hence the statute began to run not on the occurrence of the accident but upon "the ascertainment of the uninsured status of the tortfeasor." Allstate then appealed. The only issue before us is the timeliness of Spinelli's suit.

## II

Allstate claims the Court of Chancery committed legal error as to both issues: (1) the applicable statute of limitations controlling Spinelli's claim for uninsured motorist benefits; and (2) the date when Spinelli's cause of action accrued and the statute of limitations began to run on his claim. As to

---

**4.** See Appendix A for the pertinent provisions of the Allstate insurance policy concerning uninsured motorist coverage.

**5.** The arbitration provision of the Allstate policy reads in full as follows:

"*Arbitration.* If any person making claim hereunder and Allstate do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured or do not agree as to the amount of payment which may be owing under this coverage, then,

upon written demand of such person, the matter or matters upon which such person and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and Allstate each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage."

the applicable statute, Allstate contends, as stated, that Spinelli's claim is based upon personal injury. Hence, Allstate argues that the applicable statute of limitations is 10 *Del.C.* § 8119 because it controls all actions for damages based on claims for personal injury.[6] Allstate argues that this Court's 1978 decision in *Nationwide Insurance Company v. Rothermel,* Del.Supr., 385 A.2d 691 (1978), calls for, if not requires, this result. In *Rothermel,* this Court ruled that suits based on claims for personal injury protection (PIP benefits) are controlled by the time limitation of 10 *Del.C.* § 8119 and not that of § 8106. Allstate argues that this Court's *ratio decidendi* in *Rothermel* applies with equal force to accidents for uninsured motorist benefits. Hence, it contends, Spinelli's claim for uninsured benefits based on personal injury should also be controlled by the time limitations of § 8119.

As to the second issue, when Spinelli's cause of action accrued and the statute began to run on his claim, Allstate contends that under § 8119 the claim is clearly time-barred because it was not brought within two years of the date of the accident and Spinelli's alleged injuries. In the alternative, Allstate argues that even if § 8106 were found to be the governing statute of limitations, Spinelli's suit is still time-barred because the three-year limitation of § 8106 should also run from the date of accident-injury.

On the first issue, Spinelli understandably responds that the Court of Chancery correctly determined § 8106 to be the appropriate statute of limitations controlling his claim for uninsured motorist benefits. Spinelli reasons, as did the Court below, that an uninsured motorist claim is founded in contract, not tort; that is, the claim exists only by reason of the provisions of his insurance policy with Allstate. Hence, Spinelli argues, since the action is based on a bargained-for promise, the timeliness of the action should be governed by the contract language of 10 *Del.C.* § 8106.

On both issues, Spinelli responds that *Rothermel's* reasoning as applied to PIP benefits is not pertinent to a claim for uninsured motorist benefits. *Rothermel* reasoned that since an insurer's subrogation rights against a tortfeasor are subject to the two-year limitation period of § 8119, an insured's suit for PIP benefits should also be subject to the same limitation period. Spinelli argues that *Rothermel* either should be overruled or is distinguishable. We agree that *Rothermel* is distinguishable and should not control the limitation questions here presented relating to uninsured motorist coverage benefits.[7] However, we cannot agree that our decision in *Rothermel* should be overruled.

### III

#### A.

■ We conclude that a suit for recovery of uninsured motorist benefits is more near-

---

6. We understand that Spinelli's third-party claim against Gilday was confined to personal injuries and did not include a property damage claim. Further, we note that neither party addresses the issue as to what statute of limitations would control a mixed claim for personal injury and property damages asserted under Allstate's uninsured motorist coverage. (See footnote 3.)

7. The panel of this Court which previously heard this appeal concluded otherwise; that is, that Spinelli's uninsured motorist claim should be subject to the two-year limitation of § 8119; and that his claim accrued, for purposes of the running of the statute, from the date of the motor vehicle accident causing his injury. Two objectives and one reservation underlay that decision. The objectives were: (1) to apply the same (two-year) limitations rule to all motor vehicle related claims for personal injury, whether tort claims asserted against a third party or policy claims asserted against a claimant's own insurer, either for PIP benefits (*Rothermel*) or for uninsured motorist benefits (this case); and (2) to have the time limitation on all such claims run from the same date—the date of the motor vehicle accident, an easily ascertainable date that would also get all such claims in court reasonably promptly. The reservation was: the lack of a persuasive argument for a time limitation and accrual of action distinction between claims for PIP benefits and claims for uninsured motorist coverage benefits. However, with the benefit of further briefing and reargument, the Court en Banc now concludes that the panel decision was in error.

ly akin to a contract claim than a tort action and, hence, should be controlled by our contract rather than our tort statute of limitations. Thus, we hold that the three-year limitation period of § 8106 determines the timeliness of this suit for recovery of uninsured motorist benefits. We hereby adopt the view held by the majority of jurisdictions—that actions based on uninsured motorist coverage claims are actions *ex contractu* and as such are controlled by the applicable contract statute of limitations. *See,* 7 Appleman, *Insurance Law and Practice,* § 4331 (2d Ed. 1962); *see also,* Annot., 28 A.L.R.3d 580 (1969).[8]

Chancellor Marvel explained the majority view as follows:

"The view accepted generally is that despite the requirement that the insured must establish that a tort was committed by an uninsured motorist and that injury ensued, the action is nevertheless one based upon an insurance contract, on the basis of which the liability, if any, of the insurer is found, such contract limitation accordingly controls. See, e.g., *Sykes v. Fireman's Fund Ins. Co.,* D.C.Fla., 269 F.Supp. 299 [229] (1967); *Lemrick v. Grinnell Mut. Reinsurance Co.,* Iowa, 263 N.W.2d 714 (1978); *Van Hoozer v. Farmers Ins. Exchange,* Kan. [219 Kan. 595], 549 P.2d 1354 (1976); *Booth v. Fireman's Fund Ins. Co.,* La. [253 La. 869], 218 So.2d 580 (1968); *Selected Risks Ins. Co. v. Dierolf,* N.J.Super. [138 N.J.Super. 287], 350 A.2d 526 (1975); *Franco v. Allstate Ins. Co.,* Tex., 505 S.W.2d 789 (1974). Compelling reasons support the application of the statute of limitations which has to do with contractual obligations, the claim asserted against the insurance company existing solely by reason of the coverage provided by the insurance policy, absent which there could be no conceivable basis for recovery against the insurer, *Deluca v. Motor Vehicle Accident Indemnification Corp.,* N.Y. [17 N.Y.2d 76, 268 N.Y. S.2d 289], 215 N.E.2d 482 (1966). The personal injuries suffered by a plaintiff are thus not the basis of the cause of action but merely the basis for measuring the damages sustained, *Nationwide Insurance Company v. Rothermel,* Del. Supr., 385 A.2d 691, 694 (Duffy, J. dissenting) (1978)."

We approve and adopt the Chancellor's reasoning for concluding that uninsured motorist coverage claims should be controlled by 10 *Del.C.* § 8106 rather than 10 *Del.C.* § 8119.

We conclude that claims for PIP benefits are indeed distinguishable from claims for uninsured motorist benefits, in several significant respects. For instance, as *Rothermel* holds, a claim for PIP benefits becomes operable or assertable as a statutory right under 21 *Del.C.* § 2118(a) immediately upon injury or loss. And the claim is intended to be promptly paid following an accident by an insurer to an injured occupant of the insured vehicle—in accord with the underlying purpose of such "no-fault" personal injury protection benefits. The payor-insurer, through subrogation, then acquires an immediate right to sue the third-party tortfeasor for recovery of such payments. And, as *Rothermel* noted, the insurer's subrogation right over against the tortfeasor is also

---

8. The majority rule has been applied in: *Hartford Accident & Indemnity Company v. Mason,* Fla.Ct.App., 210 So.2d 474 (1968); *Booth v. Fireman's Fund Insurance Co.,* La.Supr., 253 La. 869, 218 So.2d 580 (1969); *DeLuca v. Motor Vehicle Accident Indemnity Corp.,* N.Y.Ct. App., 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966); *Pickering v. American Employers Insurance Company,* R.I.Supr., 109 R.I. 143, 282 A.2d 584 (1971); *Schleif v. Hardware Dealer's Mutual Fire Insurance Company,* Tenn.Supr., 218 Tenn. 489, 404 S.W.2d 490 (1966); *Franco v. Allstate Insurance Company,* Tex.Supr., 505 S.W.2d 789 (1974); *Sahloff v. Western Casualty & Surety Company,* Wis. Supr., 45 Wis.2d 60, 171 N.W.2d 914 (1969). Contra: *Ford v. Nationwide,* D.Del., C.A. No. 78-21 (unreported decision, June 13, 1979), applying 10 *Del.C.* § 8119; *Vaughn v. Collum,* Ga.Supr., 236 Ga. 582, 224 S.E.2d 416 (1976); *Brown v. Lumbermen's Mutual Casualty Company,* N.C.Supr., 285 N.C. 313, 204 S.E.2d 829 (1974); *State Farm Mutual Automobile Insurance Company v. Wharton,* Nev.Supr., 88 Nev. 183, 495 P.2d 359 (1972).

subject to the same two-year limitation of § 8119.[9]

In contrast, uninsured motorist statutory benefits (under 18 *Del.C.* § 3902(a)) are not embraced within the no-fault concept of an immediately assertable right, as *Rothermel* found to be the intent of 21 *Del.C.* § 2118(a). Indeed, a claim for uninsured motorist benefits, by its very nature, becomes "operative", not upon the occurrence of a motor vehicle accident, but only after the claimant-insured has established that he/she is "legally entitled to recover damages from [the] owners or operators of [the] uninsured or hit-and-run motor vehicle." (See footnote 1 above.)[10]

Further, while a PIP claim arises against the insurer as a direct result of an accident, an uninsured motorist claim is only indirectly related to the accident itself. *Pickering v. American Employers Insurance Company, supra.* Here, Spinelli, under the terms of Allstate's policy, had no assertable claim against Allstate for uninsured motorist ben-

efits until: (1) he had established his legal right to recover damages from Gilday for personal injury (and any property losses); and (2) Gilday's status was determined to be that of an uninsured motorist or the operator of an uninsured automobile within the meaning of Allstate's policy. Until those two conditions were met, Spinelli lacked standing to *assert* a claim against Allstate for uninsured motorist benefits.[11]

Moreover, under the statutory definition of "uninsured motor vehicle" within 18 *Del.C.* § 3902(c),[12] a tortfeasor's uninsured status may result from insolvency of the insurer as late as one year after the accident. And, under Allstate's policy, an uninsured driver is defined as including an "underinsured tortfeasor"—a status which could not be established until a judgment is obtained by the insured against a third-party tortfeasor.

In summary, the two types of coverage serve entirely different purposes. PIP benefits are designed to assure "prompt pay-

**9.** In *Rothermel*, Justice McNeilly, speaking for the majority, stated, in support of its ruling that a PIP suit claim filed more than two years from the date of accident was barred by § 8119:

"This conclusion is consistent and harmonious with the two-year limitation period controlling the insurer's right of subrogation, based as it is upon the statute of limitations applicable to the injured party's tort claim, i.e., § 8119. It would create an unreasonable anomaly to hold that a claim against an insured for no-fault benefits arising out of a personal injury is subject to a different and longer limitations period than the insurer's subrogation right against a tortfeasor ... This result, we believe, is unreasonable and could not have been the legislative intent." 385 A.2d 693

**10.** Further, an uninsured motorist claim may be for property damages rather than, or in addition to, a claim for personal injury. If so, § 8119 would presumably not control the time limitations of the suit or determine when the cause of action accrued. [If Spinelli's uninsured motorist claim against Allstate had been for both personal injury and property damages, it would seem incongruous to argue that each claim should be governed by a different statute of limitations.]

**11.** In this respect an uninsured motorist claim may also be characterized as being in the na-

ture of a derivative or secondary claim on an indemnity bond for failure of the tortfeasor (the primary obligor) to pay a legally imposed liability. *Compare, Rumsey Electric Co. v. Univ. of Del.*, Del.Supr., 358 A.2d 712 (1976).

**12.** 18 *Del.C.* § 3902(c) states:

"For the purposes of this section the term 'uninsured motor vehicle' shall be deemed also to include, subject to the terms and conditions of such coverage, an insured other motor vehicle where:

(1) The liability insurer of such other motor vehicle is unable because of its insolvency to make payment with respect to the legal liability of its insured within the limits specified in its policy; and

(2) The occurrence out of which such legal liability arose took place while the uninsured vehicle coverage required under subsection (a) above was in effect; and

(3) The insolvency of the liability insurer of such other motor vehicle existed at the time of or within 1 year after such occurrence.

Nothing contained in this subsection (c) shall be deemed to prevent any insurer from providing insolvency protection to its insureds under more favorable terms."

ment to an injured party for medical expenses and lost earnings and property damage," *De Vincentis v. Maryland Casualty Co.*, Del.Super., 325 A.2d 610, 612 (1974); while "[u]ninsured motorist coverage is designed to protect innocent, injured persons who are unable to obtain recompense from negligent tortfeasors." *Abramowicz v. State Farm Mutual Insurance Co.*, Del.Super., 369 A.2d 691, 694 (1977); *Booth, supra.* Thus, as stated, we conclude that while PIP benefit claims are controlled by 10 *Del.C.* § 8119, uninsured motorist benefits claims are controlled by 10 *Del.C.* § 8106.

### B.

We think the answer to the remaining question—when a cause of action for uninsured motorist benefits accrues and the three-year limitation of § 8106 begins to run—logically follows from the contract nature of the action.

The Chancellor ruled that Spinelli's cause of action for breach of contract accrued upon Spinelli's "ascertainment of the uninsured status of the tortfeasor." We disagree.

██ Under general principles of contract law, the time limitation of a contract claim limitation statute begins to run from the date of breach of contract. *Worrel v. Farmers Bank of Dela.*, Del.Supr., 430 A.2d 469 (1981); *Pioneer Nat. Title Ins. Co. v. Child Inc.*, Del.Supr., 401 A.2d 68 (1979); *Artesian Water Co. v. Lynch*, Del.Ch., 283 A.2d 690 (1971); *Pioneer Nat. Title Ins. Co. v. Sabo*, Del.Super., 382 A.2d 265 (1978); *Rudginski v. Pullella*, Del.Super., 378 A.2d 646 (1977); 51 Am.Jur.2d., *Limitation of Actions* § 126 (1970).

Established contract case law thus recognizes that until a breach occurs, there is no justiciable controversy under the contract (here a policy) upon which a party may sue. So long as the parties to a contract perform in accordance with the bargained-for obligations, no party has cause to complain. It is only when one party contends the other party has ceased to perform in violation of the contract that a justiciable controversy exists.

██ Here, we conclude that a justiciable controversy did not arise until Allstate denied Spinelli's claim for coverage benefits *and* so informed Spinelli. The record indicates that that occurred sometime in November, 1979. Hence, Spinelli's suit against Allstate filed the following month was timely filed under § 8106.

Affirmed.

### APPENDIX A

### SECTION II

### PROTECTION AGAINST BODILY INJURY AND

### PROPERTY DAMAGE BY UNINSURED AUTOMOBILES

COVERAGE SS—Uninsured Motorists Insurance

Allstate will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

No default judgment against any known person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and Allstate, as to the establishment of legal liability or of the amount of damages to which the insured is legally entitled.

*Definitions of words used under this Section*

1. *"insured"* means:

    (a) the named insured as stated in the policy, the spouse of any such named

insured and relatives of either, while residents of the same household;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above.

The insurance applies separately with respect to each insured, but the application of the insurance to more than one insured shall not operate to increase the limits of Allstate's liability.

2. *"insured automobile"* means a motor vehicle:

(a) described in the declarations as an insured automobile to which the bodily injury liability coverage of the policy applies;

(b) while temporarily used as a substitute for an insured automobile as described in subparagraph (a) above when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by a named insured or by his spouse if a resident of the same household;

but the term *"insured automobile"* shall not include:

(i) an automobile while used as a public or livery conveyance;

(ii) an automobile while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, an automobile owned by the named insured or any resident of the same household as such insured; or

(iv) under subparagraphs (b) and (c) above, an automobile furnished for the regular use of the named insured or any resident of the same household.

3. *"uninsured automobile"* means:

(a) a motor vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same either has denied coverage thereunder or is or becomes insolvent;

(b) a hit-and-run automobile as defined; or

(c) an underinsured automobile as defined;

provided a motor vehicle involved in an accident shall be presumed to be an uninsured automobile if no evidence of financial responsibility is supplied to the department of motor vehicles or the Commissioner of Motor Vehicles, as the case may be, within 60 days after the accident occurs;

but the term *"uninsured automobile"* shall not include:

(i) an insured automobile;

(ii) a motor vehicle which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(iii) a motor vehicle which is owned by the United States of America, Canada, a state, a political sub-division of any such government or an agency of any of the foregoing;

(iv) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle; or

(v) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

4. *"hit-and-run automobile"* means a motor vehicle which causes bodily inju-

ry to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, or which causes property damage arising out of physical contact of such vehicle with such property, provided: (a) the owner or operator of such "hit-and-run automobile" is unknown or after reasonable diligence cannot be found; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles of the State of Delaware or to the equivalent department in the state where the accident occurred, and shall have filed with Allstate within 30 days after the accident a statement under oath that the insured or his legal representative has a cause of action arising out of such accident for damages against a person or persons who are unknown or after reasonable diligence cannot be found, and setting forth the facts in support thereof; and (c) at Allstate's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying, if so, at the time of the accident.

5. *"underinsured automobile"* means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance; provided, however, that the limits of liability for Coverage SS—Uninsured Motorists Coverage stated in the declarations exceed the amounts specified for bodily injury liability by the financial responsibility law of the state in which the insured automobile is principally garaged.

6. *Occupying.* The word *"occupying"* means in or upon or entering into or alighting from.

7. *State.* The word *"state"* includes the District of Columbia, a territory or possession of the United States, and a province of Canada.

DUFFY, Justice (concurring):

I concur in the judgment of the Court.