# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ADAM J. SCHMELZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CA. No.: N18C-08-105 VLM |
| v. | ) | |
| | ) | |
| CYNTHIA R. MARTONE, | ) | |
| | ) | |
| Defendant/ | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIBERTY MUTUAL FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Submitted: February 18, 2019
Decided: May 2, 2019

## MEMORANDUM OPINION

*Upon Consideration of Third-Party Defendant Liberty Mutual Fire Insurance Company's Motion to Dismiss Third-Party Complaint,*
**GRANTED**.

Robert T. Graney, Esq., Law Offices of Chrissinger & Baumberger, Wilmington, Delaware. *Attorney for Third-Party Defendant Liberty Mutual Fire Insurance Company.*

Matthew E. O'Byrne, Esq., Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware. *Attorney for Defendant/Third-Party Plaintiff Cynthia Martone.*

**MEDINILLA, J.**

## INTRODUCTION

Plaintiff Adam J. Schmelz ("Schmelz") brought a claim against Defendant/Third-Party Plaintiff Cynthia R. Martone ("Martone"), the alleged tortfeasor, seeking damages resulting from a motor vehicle accident between the parties. Martone brings this third-party action against Third-Party Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Schmelz's uninsured motorist ("UM") carrier, seeking contribution and/or indemnification. Liberty Mutual moves to dismiss the Third-Party Complaint arguing Martone does not have standing to bring a claim against it and for failure to state a claim under Superior Court Civil Rule 12(b)(6). For the reasons stated below, Liberty Mutual's Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

The allegations of negligence stem from a collision that occurred on July 31, 2017 while both Schmelz and Martone were driving southbound on Route 896 on the Summit Bridge in New Castle County.[1] Schmelz claims he stopped his vehicle when he came upon a couch in the roadway of the bridge and was then rear-ended by Martone.[2] On August 13, 2018, Schmelz filed a Complaint in the underlying

---

[1] *See generally* Compl.
[2] *Id.* ¶ 4.

action in this case, alleging a claim of negligence against Martone arising from this motor vehicle accident.

Martone then filed a Third-Party Complaint against Liberty Mutual on September 11, 2018.[3] Liberty Mutual is Schmelz's—not Martone's—uninsured motorist carrier.[4] Martone asserts that a couch fell off an unidentified vehicle before the accident and obstructed the roadway.[5] Martone seeks contribution and/or indemnification against Liberty Mutual as Schmelz's UM carrier for any amount that she may be required to pay Schmelz.[6]

Liberty Mutual filed this Motion to Dismiss on January 11, 2019, seeking dismissal of the Third-Party Complaint for lack of standing and failure to state a claim upon which relief may be granted under Superior Court Civil Rule 12(b)(6).[7] Martone filed her response on February 4, 2019.[8] Liberty Mutual's reply was filed on February 11, 2019.[9] The Court held oral argument on February 18, 2019. The matter is now ripe for review.

---

[3] *See generally* Third-Party Compl.
[4] *Id.* ¶ 24.
[5] *Id.* ¶ 21.
[6] Third-Party Compl. ¶¶ 25, 26. *See* Def./Third-Party Pl.'s Resp. to Third-Party Def.'s Mot. to Dismiss Third-Party Compl. ¶ 3 [hereinafter Martone Resp.].
[7] *See generally* Third-Party Def. Liberty Mutual Fire Ins. Co.'s Mot. to Dismiss Third-Party Compl. [hereinafter Liberty Mutual Mot.].
[8] *See generally* Martone Resp.
[9] *See generally* Third-Party Def.'s Reply to Third-Party Pl.'s Resp. to Their Mot. to Dismiss [hereinafter Liberty Mutual's Reply].

## STANDARD OF REVIEW

For purposes of a motion to dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[10] Even vague allegations are considered well-pleaded if they give the opposing party notice of a claim.[11] The Court must draw all reasonable inferences in favor of the non-moving party;[12] however, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[13] Dismissal of a complaint under Rule 12(b)(6) must be denied if the plaintiff could recover under "any reasonably conceivable set of circumstances susceptible of proof under the complaint."[14]

When "the issue of lack of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1)."[15] Here the issue of lack of standing is closely related to the merits, and the Court will consider it under Rule 12(b)(6).

---

[10] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[11] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[12] *Id.*

[13] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (internal citation omitted).

[14] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952)).

[15] *Appriva Shareholder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007)).

4

## DISCUSSION

UM statutes are generally "designed for the benefit of insureds and not insurers."[16] Delaware's UM statute, 18 *Del. C.* § 3902,[17] provides uninsured motorist coverage, which is intended to protect persons who are injured in an accident with an uninsured tortfeasor.[18] The statute is intended to "provide protection for the insured driver against the negligence of an uninsured motorist,"[19] rather than afford coverage to an uninsured motorist.[20] Here, Martone wishes to pursue a third-party complaint against Schmelz's UM carrier, seeking contribution and/or indemnification for damages she may have to pay to him. Thus, the question comes down to whether Martone has standing to bring an action against Liberty Mutual for the alleged torts of an unidentified vehicle.

---

[16] 9 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, & Jordan R. Plitt, *Couch on Insurance* § 122:11 (3d ed. 2018); *See also Broadway v. Allstate Property and Casualty Ins. Co.*, 2015 WL 4749176, at *3 (Del. Super. Aug. 11, 2015) (internal quotation and citation omitted).

[17] 18 *Del. C.* § 3902 ("No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.")

[18] *See* 18 *Del. C.* § 3902(a).

[19] *Broadway*, 2015 WL 4749176, at *3.

[20] *See id.* (citing 8A Steven Plitt, Daniel Maldonado, Joshua D. Rogers, & Jordan R. Plitt, *Couch on Insurance* § 122:11 (3d ed. 2015)).

### *Elements of Standing*

Standing refers to a party's right "to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[21] In Delaware, in order to bring an action a party must establish standing by showing: "(1) an injury-in-fact—to a legally protected interest—that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the claim is redressable by a favorable decision."[22] For the reasons that follow, Martone is unable to establish that she has a legally protected interest in the UM contract between Liberty Mutual and Schmelz to assert a claim against it as an insured or an intended beneficiary.

### *Martone Lacks Standing to Maintain Her Claims Against Liberty Mutual*

The Superior Court addressed a similar issue in *Lankford v. Richter*.[23] There, State Farm Mutual Automobile Insurance Company ("State Farm"), the plaintiff's UM carrier, was joined by the defendant for similar claims of contribution and indemnification.[24] In *Lankford*, there was a seven-car chain collision, and the driver of the first car was uninsured.[25] It was not until after the plaintiff's claim for UM

---

[21] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991) (citing 59 Am. Jur. 2d *Parties* § 30 (1989)).
[22] *Broadway*, 2015 WL 4749176, at *3 (citing *Dover Historical Society v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003)).
[23] 1989 WL 12229 (Del. Super. Jan. 27, 1989).
[24] *See id.* at *1.
[25] *See id.*

benefits was denied by her UM carrier, default judgment was entered against the uninsured driver of the first vehicle, and the plaintiff's claim for UM coverage was barred by the statute of limitations, that the defendant filed a third-party complaint against the plaintiff's UM carrier for contribution and indemnification.[26]

First the *Lankford* Court considered that the Contribution Act under 10 *Del. C.* § 6302 provides a right of contribution among joint tortfeasors.[27] Joint tortfeasors are defined as "2 or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."[28] The *Lankford* Court found that the UM carrier did not share a common liability with the joint tortfeasor and it did not fall within the definition of joint tortfeasor under the Contribution Act because it was not "jointly or severally liable *in tort*."[29]

The *Lankford* Court held further that any of the UM carrier's liability was governed by the contract with the plaintiff and applicable insurance laws,[30] based on the Delaware Supreme Court's holding that actions dealing with UM coverage

---

[26] *See Lankford*, 1989 WL 12229, at *1.

[27] *Id.* at *1 (citing 10 *Del. C.* § 6302(a)).

[28] 10 *Del. C.* § 6301.

[29] *Lankford*, 1989 WL 12229, at *2 (explaining that if State Farm had any liability it was governed by its contract with the plaintiff and that under contract law incidental beneficiaries to a contract do not have standing to enforce the contract) (emphasis in original).

[30] *See id.* (discussing State Farm's liability based on its contract with the plaintiff and under applicable insurance laws).

claims are "actions *ex contractu*."[31] The Court in *Lankford* determined that the defendant could not seek contribution from State Farm and dismissed the third-party complaint.[32] This Court agrees with *Lankford* that any of Liberty Mutual's responsibility is governed by the contract with Schmelz.

Under contract law, incidental beneficiaries do not have standing to enforce a contract,[33] but a third-party intended beneficiary may be able to recover on the insurance policy, even if the third-party is not a named insured.[34] The parties need to have intended to confer a benefit on the third-party in order to be an intended beneficiary under the contract.[35] The Court looks to the language of the insurance policy "to determine the intent of the parties and whether an injured party is a third-party beneficiary."[36] Unless the policy says otherwise, "injured parties are merely incidental beneficiaries and have no right under the policy to sue the liability insurer until a judgment has been obtained against the insured."[37]

---

[31] *Lankford*, 1989 WL 12229, at *2 (quoting *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1290 (Del. 1982)).

[32] *See id.* at *2-3 (finding the Court was "unable to impose a duty on plaintiff's uninsured motorist carrier to compensate a joint tortfeasor" and also dismissed the defendant's claim for indemnification).

[33] *Id.* (citing *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675, 679 (Del. 1980)).

[34] *Broadway*, 2015 WL 4749176, at *5 (citing *Willis v. City of Rehoboth Beach*, 2004 WL 2419143, at *2 (Del. Super. Oct. 14, 2004)).

[35] *See id.* (citing *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. 1990)) (explaining that "indirectly or coincidentally" benefitting from performance of the contract does not provide the third-party with rights under the contract).

[36] *Id.* (citing *Greater New York Mut. Ins. Co. v. Travelers Ins. Co.*, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011); *Willis*, 2004 WL 2419143, at *2).

[37] *Id.* (quoting *Willis*, 2004 WL 2419143, at *2).

The rationale in *Broadway v. Allstate Property and Casualty Insurance Company*[38] is also persuasive where the Superior Court considered a similar issue in the context of subrogation. There, the Court looked at both the UM statute and the insurance contract to determine if the defendant UM carrier could maintain a direct action against the third-party defendant liability insurance carrier.[39] The Court held no direct claim could be brought by the defendant as a subrogee-insurer, also finding that the defendant was not a third-party beneficiary to the liability insurance contract with the tortfeasor,[40] and dismissed the claim for lack of standing.[41] Here, Martone cannot interject herself into the contractual relationship between Liberty Mutual and Schmelz. Schmelz's contract with Liberty Mutual does not specifically provide coverage to injured parties like Martone. Under the contract, she is not a named insured, a permissive operator, or an occupant of Schmelz's vehicle.

This Court finds that Martone fails to establish that she was an insured or that she was an intended beneficiary of the contract between Schmelz and Liberty Mutual. Although Martone argues that *Evans v. Stuard* [42] is applicable, this Court disagrees. There are two distinctions that distinguishes *Evans* from this record.

---

[38] 2015 WL 4749176 (Del. Super. Aug. 11, 2015).
[39] *See id.* at *3-6.
[40] *See id.* at *5-6.
[41] *See id.* at *6 (granting third-party defendant's motion to dismiss the third-party complaint).
[42] 1989 WL 167406 (Del. Super. Oct. 6, 1989).

9

First, in *Evans*, the existence of a "phantom" vehicle that caused the emergency situation was not disputed by the parties.[43] Second, the plaintiff's insurance carrier accepted responsibility to defend and assume payment for an uninsured motorist that causes an injury to its insured.[44] The *Evans* Court focused in large part on the social policy behind Delaware's UM statute and on the interests of judicial economy to allow the defendant to maintain a claim for contribution against the plaintiff's UM carrier.[45] Here, unlike *Evans*, Liberty Mutual disputes the existence of an unidentified uninsured vehicle and it does not accept responsibility for payment of UM benefits. Although there is no dispute that there was a couch in the roadway of the Summit Bridge, it is unknown how the couch got there. Although inferences could certainly be made that it *could have* fallen from or been thrown from a vehicle—there is no evidence that the placement of the couch on the roadway, in fact, involved an unknown or phantom vehicle to trigger any obligation for uninsured motorist coverage. Further, the UM statute is intended to provide coverage to insured drivers, and the "UM carrier stands in the shoes of the absent tortfeasor for the purpose of providing coverage *to its own insured.*"[46] Even if it

---

[43] *Evans*, 1989 WL 167406, at *1.

[44] *See id.* at *3 ("Nationwide willingly accepted the responsibility to defend and assume the risk attributable to an uninsured motorist causing injury to its insured and accepted payment for assuming that potential liability.").

[45] *Id.* at *2-4 (denying the plaintiff's uninsured motorist carrier's motion for summary judgment).

[46] *Broadway*, 2015 WL 4749176, at *5 (citing *Withrow v. Spears*, 2013 WL 5615573, at *4 (D. Del. Oct. 15, 2013); *Price v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1213292, at *6 (Del. Super.

could be determined that there was another tortfeasor, Liberty Mutual is intended to stand in the shoes of that absent tortfeasor for the purpose for providing coverage to *its* insured, Schmelz—not Martone.

For the reasons outlined, this Court is guided by the *Lankford* decision and the *Broadway* rationale in finding that Martone does not have standing to bring a claim for contribution and/or indemnification against Liberty Mutual.

## CONCLUSION

Martone does not have a right to contribution or indemnification because she is neither the insured nor an intended third-party beneficiary to Schmelz's contract with Liberty Mutual. She is unable to prove an injury to a legally protected interest; a required element to establish standing. In drawing all reasonable inferences in favor of the non-moving party, Martone has failed to state a claim under Rule 12(b)(6). Therefore, Liberty Mutual's Motion to Dismiss the Third-Party Complaint for lack of standing is **GRANTED**.

Judge Vivian L. Medinilla

oc: Prothonotary
cc: All Counsel of Record (via e-filing)

---

Mar. 15, 2013) *aff'd*, 2013 WL 5178520 (Del. Sept. 13, 2013); *Evans*, 1989 WL 167406, at *2) (emphasis in original).

11